UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

MICHAEL W. KOPER,

                 Debtor.

------------------------------------------------------------x
TRINITY CHRISTIAN CENTER OF
SANTA ANA, INC.,

                 Plaintiff,

    against

MICHAEL W. KOPER,

                 Defendant.

------------------------------------------------------------x

Case No.: 13-74213-las

Chapter 7

Adv. Pro. No.: 13-8168-las

## MEMORANDUM DECISION AND ORDER

*Appearances:*

LeClair Ryan
*Attorneys for Plaintiff*
By: Michael T. Conway, Esq.
885 Third Avenue, 16th Floor
New York, New York 10022

Winters & King Inc.
*Attorneys for Plaintiff*
By: Michael King, Esq.
2448 E. 81st St., Suite 5900
Tulsa, Oklahoma 74137

Michael Koper
*Pro se Defendant*
100B Haven Avenue #2
Port Washington, New York 11050

Keeling Law Group, PLLC
*Attorneys for Brittany Koper*
By: David R. Keesling, Esq.
401 S. Boston Ave.
Mid-Continent Tower, Suite 450
Tulsa, Oklahoma 74103

HON. LOUIS A. SCARCELLA, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the motion dated June 2, 2014 of Plaintiff, Trinity Christian Center of Santa Ana, Inc. ("TCCSA" or "Plaintiff"), for an order (i) staying TCCSA's adversary proceeding against the Debtor Defendant, Michael Koper (the "Debtor"), which seeks a determination that debts owed to it by the Debtor are nondischargeable under section 523(a)(2), (a)(4) and (a)(6) of the Bankruptcy Code because the debts were procured through fraud, false pretenses, and defalcation, and (ii) compelling the Debtor to participate in an arbitration proceeding in California (the "Arbitration Proceeding") of TCCSA's claims against him and his non-debtor spouse, Brittany Koper ("Brittany", together with the Debtor, the "Kopers") (the "Motion to Compel Arbitration") [dkt no. 32].   The Debtor filed opposition dated June 22, 2014 to the Motion to Compel Arbitration (the "Objection") [dkt no. 43].   At issue is whether the determination of the underlying issues of liability and damages in this pending adversary proceeding constitutes (a) a "non-core" proceeding, as asserted by TCCSA, subject to mandatory arbitration such that this Court must stay this adversary proceeding in deference to the pending Arbitration Proceeding and give collateral estoppel effect to any decision that may be rendered by the arbitrator on the very same matters pending before this Court, or (b) a "substantially core" proceeding such that this Court may exercise its discretion in considering whether this adversary proceeding should be stayed in favor of the Arbitration Proceeding.   For the reasons set forth below, the Motion to Compel Arbitration is denied.   The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the

Standing Order of Reference entered by the United States District Court for the Eastern District of

New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated

December 5, 2012, effective *nunc pro tunc* as of June 23, 2011.

<u>FACTS</u>[1]

I.       The Parties and the Underlying Facts.

Plaintiff is a California nonprofit corporation that operates as a church and a

religious broadcasting company that does business as Trinity Broadcasting Network ("TBN").

Plaintiff is featured on thousands of television and cable systems worldwide and on the internet.

The Kopers were employed by the Plaintiff and related organizations from 2006 to September

2011 (the "Employment Period") and by 2008 they held various positions as high ranking

employees and corporate officers.   Brittany is the granddaughter of Paul Crouch, Sr., the

Plaintiff's founder.   The Plaintiff's Board of Directors and corporate officers are made up of a

core group of Brittany's family members. During the Employment Period, the Kopers also were

appointed directors of International Christian Broadcasting, Inc. ("ICB"), an associated non-profit

entity of TCCSA, which also does business as Heroes Under God ("HUG").

Brittany was employed as Plaintiff's Director of Personnel and eventually became

Director of Finance around June 2011.   In connection with her employment, Brittany signed a

confidentiality agreement (the "Confidentiality Agreement") and a Comprehensive Arbitration

Agreement on February 21, 2008.   Under the Confidentiality Agreement with the Plaintiff,

through its Trinity Broadcasting Network, Brittany agreed to keep certain information she

received through her employment confidential and to return to the Plaintiff any documents or

materials containing any confidential information upon the termination of her employment.

---

[1] These facts are taken from the pleadings, exhibits and other papers submitted by the parties.

Pursuant to the Comprehensive Arbitration Agreement with the Plaintiff, Brittany agreed and acknowledged that the Plaintiff and she will utilize binding arbitration to resolve all disputes that may arise out of the employment context.

At least from July 2009 to September 2011, Michael resided in Lake Forest, California.   Michael worked directly with Plaintiff's General Counsel in the legal department as a law clerk.   By 2008, Michael became a corporate officer of the Plaintiff holding the position of Assistant Secretary.   On August 16, 2010, Michael also signed a Comprehensive Arbitration Agreement similar to the one Brittany signed with the Plaintiff.   The Comprehensive Arbitration Agreement provides that binding arbitration shall be conducted pursuant to the Federal Arbitration Act under the jurisdiction of the County of Orange in the state of California and shall also be in conformity with the procedures of the California Arbitration Act.   The arbitrator shall be a retired California Superior Court Judge, or a qualified individual to whom the parties mutually agree. Michael also allegedly signed a confidentiality agreement although a copy of such confidentiality agreement has not been submitted to the Court.   In June 2011, Michael was promoted to Director of Plaintiff's Media Services Agency.   As part of his promotion, Michael received a corporate credit card from the Plaintiff for his use.

II.	Prior and Pending Litigation.

On September 30, 2011, TCCSA and ICB terminated the Kopers' employment for alleged wrongdoing that occurred in connection with their employment.   Thereafter, TCCSA and ICB commenced multiple legal proceedings against the Debtor, some of which are described herein, in different jurisdictions, including the Superior Court of the State of California in the County of Orange (the "Orange County Superior Court"), the United States District Court for the

Central District of California ("California District Court"), the United States District Court for the Eastern District of New York, the Supreme Court of the State of New York, and the New Jersey Superior Court.

On October 18, 2011, Redemption Strategies, Inc., a for-profit corporation, allegedly created by TCCSA and ICB, sued the Kopers in the Orange County Superior Court for alleged embezzlement of approximately $1.3 million from ICB and/or TCCSA.

On May 4, 2012, Plaintiff filed an action before the Orange County Superior Court, Case No. 30-2012-00566620, seeking injunctive relief against the Kopers pursuant to the Confidentiality Agreements to prevent disclosure of certain confidential information, trade secrets and family confidences obtained by them during their employment with the Plaintiff (the "Confidentiality Enforcement Action").   In that action, the Plaintiff alleged that the Kopers misappropriated corporate records, including computer records, emails, financial records and corporate resolutions from the Plaintiff and ICB.   The Plaintiff accused the Kopers of launching a media smear campaign against the Plaintiff and causing damage to the Plaintiff's reputation and financial harm by distributing the Plaintiff's confidential information to the public.

On June 8, 2012, the Plaintiff sued the Kopers in another action before the Orange County Superior Court, Case No.: 30-2012-00575085, asserting similar allegations as the Confidentiality Enforcement Action but sought, *inter alia,* to compel arbitration of their disputes pursuant to the Comprehensive Arbitration Agreements.   The action was removed to the California District Court under Case No. 8:12-CV-01121.

On June 26, 2012, the Plaintiff filed an action against the Kopers in California District Court captioned *Trinity Christian Center of Santa Ana, Inc. v. Michael Koper et al.,* No.

SACV 12-01049 (the "Central District Case") which asserts claims that are similar to the claims asserted in this adversary proceeding.   In the Central District Case, the Plaintiff alleges that during the Employment Period, (i) the Kopers made unlawful use of corporate credit cards, (ii) Michael created a separate entity known as "Michael Koper d.b.a Media Services" in order to unlawfully obtain funds owed to Media Services Agency, (iii) the Kopers obtained and embezzled Plaintiff's funds for their own use, and breached their fiduciary duties, including the duty of loyalty, owed to Plaintiff, (iv) the Kopers stole and converted Plaintiff's assets for their own use, and (v) the Kopers breached the terms of the Confidentiality Agreements.   The Plaintiff also moved to compel the Kopers to participate in an arbitration to resolve the disputes between the parties.   Michael opposed, arguing, *inter alia,* that there is an issue as to the applicability of the arbitration agreement to the existing dispute between the parties.

On June 21, 2013, U.S. District Court Judge David O. Carter granted the Plaintiff's motion to compel arbitration (the "Arbitration Order") in the Central District Case, finding "that the question of arbitrability itself is one for the arbitrator, and that the California District Court's involvement on this issue must end."   Arbitration Order at 5.   Accordingly, before a determination of Plaintiff's underlying claims against the Kopers in the Arbitration Proceeding can proceed, the arbitrator must determine whether the dispute between the Plaintiff and the Kopers is even subject to arbitration.

III.    Debtor's Bankruptcy Filing.

Michael filed for chapter 7 relief under the Bankruptcy Code on August 14, 2013 and the bankruptcy case was assigned to Judge Dorothy Eisenberg.

A.    *Lift Stay Motion and Dischargeability Actions filed by Plaintiff and ICB.*

On October 5, 2013, the Plaintiff and ICB filed a motion in the bankruptcy case seeking relief from the automatic stay for "cause" under 11 U.S.C. § 362(d)(1) and the standard set forth by the Court of Appeals for the Second Circuit in *In re Sonnax Indus., Inc*., 907 F.2d 1280 (2d Cir. 1990), in order to prosecute their various lawsuits against the Kopers, including the Arbitration Proceeding and the Confidentiality Enforcement Action, that are pending in various other jurisdictions (the "Lift Stay Motion") [dkt no. 26].   The Plaintiff and ICB also averred that the liquidation or estimation of contingent or unliquidated tort claims is not a core proceeding and that while the Court may hear non-core related proceedings, the Court may not enter final orders or judgment absent consent of the parties, but must submit proposed findings of fact and conclusions of law to the district court.

On October 14, 2013, less than ten days after filing the Lift Stay Motion and prior to the return date for the hearing on the Lift Stay Motion, the Plaintiff and ICB commenced three adversary proceedings between them against the Debtor (Adv. Pro. No. 13-8167, Adv. Pro. No. 13-8168, which is the subject of this Memorandum Decision and Order, and Adv. Pro. No. 13-8169, collectively, the "Adversary Proceedings").   On the same date the Adversary Proceedings were filed, the Plaintiff and ICB also filed proofs of claim in this bankruptcy case for the value of embezzled funds allegedly stolen by the Debtor.   ICB filed proof of claim no. 1 asserting a general unsecured claim in the amount of $690,000.   The Plaintiff filed proof of claim no. 2 asserting a general unsecured claim in the amount of $800,000.

The complaint for each of the Adversary Proceedings seeks a determination that debts owed by the Debtor to Plaintiff and/or ICB are not dischargeable under section 523(a)(2)(A)

6

and (a)(6) of the Bankruptcy Code, and also under section 523(a)(4) of the Bankruptcy Code for Adv. Pro. No. 13-8167 and Adv. Pro. No. 13-8168.   The Plaintiff and ICB allege that "[a]s such, this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (O)."   Adversary Proceedings Complaints at 2.

In the complaint filed in this adversary proceeding (the "Complaint"), the Plaintiff alleges that the Debtor created fraudulent documents, which included a multi-year consulting agreement, by forging signatures of TCCSA directors and officers on the documents in order to benefit himself financially, and conspired with Brittany to misappropriate funds from the Plaintiff by making purchases in excess of $25,000 for personal use on the TCCSA credit card issued to the Debtor and to have the Plaintiff pay the unauthorized credit card charges.   The Debtor also allegedly redeemed corporate credit card bonus points in excess of $16,000 for his personal benefit, received expense reimbursements from the Plaintiff for expenses that were never actually incurred, and placed his father on the Plaintiff's payroll even though his father was not an employee of the Plaintiff.   The Plaintiff also asserts that the Debtor registered a fictitious business in the name of "Koper doing business as Media Services" with the Orange County Clerk Recorder's Office, opened bank accounts with US Bank and with Bank of America in Media Services' name, and then misappropriated the Plaintiff's funds by diverting and depositing checks intended for Plaintiff's Media Services Agency into those bank accounts.   Accordingly, the Plaintiff argues that the debts owed to the Plaintiff are nondischargeable: (i) under section 523(a)(2) because the Debtor obtained such funds under false representations, false pretenses and actual fraud, (ii) under section 523(a)(4) because the Debtor's actions during the Employment Period constituted embezzlement, and/or defalcation while acting in a fiduciary capacity, and (iii)

under section 523(a)(6) because the Debtor's actions constitute willful and malicious injury to the Plaintiff and/or its property.

The Summons for each of the Adversary Proceedings was issued by the Bankruptcy Clerk's Office on October 15, 2014 and the deadline for filing answers to the complaints was November 14, 2013.   So eager to commence its litigation against the Debtor before the bankruptcy court, ICB served third party subpoenas in one of the related adversary proceedings on the Debtor's current employer, Penta Communications, LLC, and its co-owners, Joseph Iglesias and Jason Boyd, on the same date the Summons were issued.   The third party subpoenas demanded the production of documents by October 31, 2014 for the period after the Kopers' employment was terminated and scheduled third party depositions on the same October 31, 2014 date.   The third party subpoenas were issued notwithstanding the deadline for filing an answer had not even passed and before a Rule 26(f) planning conference under the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") had taken place.

On October 16, 2013, less than two days after the Adversary Proceedings were filed, Plaintiff and ICB filed a motion for an order pursuant to Bankruptcy Rule 2004 authorizing them to commence discovery regarding the acquisition and transfer of assets by the Debtor and Brittany (the "Rule 2004 Motion").   The Rule 2004 Motion with respect to the Debtor raised a discovery issue because once an adversary proceeding has been commenced, discovery is governed by Fed. R. Civ. P. Rule 26 as made applicable by Bankruptcy Rule 7026 rather than Bankruptcy Rule 2004.   *In re Bennett Funding Group, Inc*., 203 B.R. 24, 28-9 (Bankr. N.D.N.Y. 1996).   The Rule 2004 Motion was subsequently withdrawn at the November 19, 2013 hearing on the motion.

On November 6, 2013, the Debtor filed his answers to the complaints in the Adversary Proceedings asserting general denials, affirmative defenses, and a counterclaim that in the event the alleged debts are discharged, a judgment against Plaintiff should be awarded for reasonable attorneys' fees and costs.   Plaintiff filed an answer to the Debtor's counterclaim on November 18, 2013.

On November 12, 2013, the Debtor filed an objection to the Lift Stay Motion and the Plaintiff filed a reply on November 17, 2013.   Judge Eisenberg held a hearing on the Lift Stay Motion on November 19, 2013 and by Order dated December 5, 2013 ("Judge Eisenberg's Order"), Judge Eisenberg denied the Lift Stay Motion in its entirety and decreed that the automatic stay shall remain in full force and effect with respect to any judicial, administrative or other action or proceeding against the Debtor, including but not limited to, any and all arbitration proceedings. Judge Eisenberg's Order also stated that the denial of the Lift Stay Motion is without prejudice to Plaintiff and ICB filing a subsequent motion for relief from the automatic stay based upon a change of circumstances.   The Plaintiff did not appeal Judge Eisenberg's Order.

On January 5, 2014, an Order of discharge was entered by the Court discharging the Debtor of "all debts that arose before the entry of the order of relief under this chapter," subject to the outcome of the Adversary Proceedings with respect to the debts owed to the Plaintiff and ICB. 11 U.S.C. § 727(b).   The granting of the discharge triggered (1) the dissolution of the automatic stay pursuant to section 362(c)(2)(C) of the Bankruptcy Code, and (2) the operation of the discharge injunction under section 524(a)(2) of the Bankruptcy Code, which protects a debtor from any personal liability on the discharged debts.   11 U.S.C. § 524(a)(2).   See also *Green v. Welsh*, 952 F.2d 30, 32 (2d Cir. 1992).

9

On March 27, 2014, Judge Eisenberg retired, and the bankruptcy case and the related Adversary Proceedings were assigned to this Court on May 19, 2014.

On May 13, 2014, the Debtor filed a motion seeking to consolidate all three of the Adversary Proceedings for discovery and trial (the "Consolidation Motion").   The Plaintiff and ICB filed a response to the Consolidation Motion on June 16, 2014.

B.   *Motion to Compel Arbitration.*

On June 3, 2014, the Plaintiff filed this Motion to Compel Arbitration and renewed its attempts for entry of an order to stay this adversary proceeding and to compel the Debtor to participate in the Arbitration Proceeding.   In support of its Motion to Compel Arbitration, the Plaintiff argues that the Complaint filed in this adversary proceeding mirrors the arbitration claims, and that both the Central District Case and the Confidentiality Enforcement Action pending before the Orange County Superior Court are related to the claims asserted in this adversary proceeding.   Notwithstanding the foregoing assertions of similarity of the pending actions and the fact that Plaintiff plead that the matters before this Court are core proceedings, the Plaintiff argues that the underlying matters are all non-core matters involving prepetition torts or contract breaches under state law and that this adversary proceeding was filed solely to allow the Plaintiff to obtain an order finding that the underlying debts to be nondischargeable once the claims have been liquidated in the Arbitration Proceeding.   Accordingly, the Plaintiff insists that the Court must stay this nondischargeability proceeding and refer the underlying issues to arbitration for resolution.   Moreover, Plaintiff argues that this Court should forbear from intervening not only until the arbitrator has issued a final award on the underlying issues of liability and amount of damages in the Arbitration Proceeding and but also until the

Confidentiality Enforcement Action pending in the Orange County Superior Court is concluded so the Plaintiff can obtain a permanent injunction against the Kopers.

The Plaintiff further avers that even if the Court finds the underlying matters to be core proceedings, this Court lacks discretion to stay the arbitration under *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2000) and *United States Lines, Inc. et al. v. American Steamship Owners Mutual Protection and Indemnity Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999), *cert. denied*, 529 U.S. 1038, 120 S. Ct. 1532, 146 L. Ed 2d 347 (2000).

In addition, the Plaintiff argues that Judge Eisenberg's Order denied the Lift Stay Motion without prejudice to the Plaintiff bringing a subsequent motion for relief from stay when circumstances change. Unlike when the Lift Stay Motion was brought, there is no automatic stay currently in effect, but rather a permanent injunction is in place under 11 U.S.C. § 524(a)(2) by reason of the Debtor having received a discharge. Nevertheless, the Court will consider the Plaintiff's argument that a change in circumstances justifies its renewed request that the Court stay this adversary proceeding and refer the parties to the alternate forum of arbitration.

The Plaintiff points to the following as constituting the requisite change in circumstances. First, on May 23, 2014, the Orange County Superior Court lifted a stay it imposed on the Confidentiality Enforcement Action against Brittany, which the Plaintiff argues results in a restored active civil and arbitration matter against her. Because the arbitration claims against Brittany are essentially the same as those against the Debtor, this, the Plaintiff says, constitutes a change in circumstance that warrants the granting of its motion to compel the Debtor to participate in the same arbitration proceeding. Second, all discovery related to this adversary proceeding has been completed and the parties are ready for trial. Therefore, Plaintiff concludes that it is now

11

timely and appropriate for this Court to refer the parties to arbitration and stay the adversary proceeding pending the outcome of the arbitration.

Debtor contends in the Objection that the Motion to Compel Arbitration inappropriately sought to re-litigate the Lift Stay Motion in violation of Judge Eisenberg's Order as there was no change in circumstances.   The Orange County Superior Court lifted its own stay of the proceedings against Brittany because she was not a debtor or a defendant in this adversary proceeding but there was no change of circumstance with respect to the Debtor.   In addition, this adversary proceeding is a core proceeding to determine the dischargeability of the alleged debts, which is under the exclusive jurisdiction of the bankruptcy court.   The Debtor disputes the validity and enforceability of the Arbitration Agreement and argues that (i) no determination has been made whether the arbitration agreement is enforceable, and (ii) an arbitrator would first need to decide whether the dispute between the parties is even subject to arbitration.   Debtor contends that this adversary proceeding is not ready for trial as there are pending discovery disputes before this Court.   Lastly, the Debtor asserts that he filed for bankruptcy because he was rendered destitute by the Plaintiff's vexatious litigation strategy in instituting multiple lawsuits against him in various forums and the purpose of the bankruptcy filing was to force the Plaintiff and ICB to bring all their claims against him to a single forum.   If this adversary proceeding were to be stayed, the Plaintiff and ICB will continue to prosecute the two other adversary proceedings against the Debtor in this Court while having a simultaneous arbitration proceeding take place in California.   Even if the Plaintiff were to succeed in the Arbitration Proceeding, the parties would need to re-litigate the issue of dischargeability before this Court, which would interfere with the purpose of the underlying bankruptcy case to centralize litigation and unnecessarily prolong the

litigation of this adversary proceeding.

In its reply dated July 10, 2014, the Plaintiff reiterates its argument that this Court has no discretion to refuse to compel arbitration under *MBNA Am. Bank v. Hill*, 436 F.3d 104 (2d Cir. 2006) and *In re Crysen/Montenay*, because the underlying claims alleged in the adversary proceeding are non-core claims.   The Plaintiff argues that the Consolidation Motion also constitutes a change in circumstances as the underlying claims in this adversary proceeding are subject to an arbitration agreement while the claims asserted in the other two adversary proceedings are not subject to arbitration.   Plaintiff further argues that the Debtor sought a wide array of documents which are relevant only to the details of the underlying claims and not just the dispute as to dischargeability, and that this broadening of discovery allegedly expanded the scope of this adversary proceeding and constitutes yet another change in circumstance.

The Court conducted a hearing on the Motion to Compel Arbitration and the Objection on July 14, 2014 and took the matter under submission.   In considering the Motion to Compel, the Court has considered the motion itself, the filings with respect thereto (including exhibits), and each of the parties' arguments at the July 14 hearing.   The Court also has taken judicial notice of the contents of the docket in this bankruptcy case and the Adversary Proceedings. *Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 Fed. Appx. 46, 48 (2d Cir. 2005) (Courts are empowered to take judicial notice of public filings, including a court's docket).

<u>DISCUSSION</u>

I.    General.

"The Federal Arbitration Act establishes a 'federal policy favoring arbitration

13

agreements'" and that contractual arbitration provisions should be enforced.  *MBNA*, 436 F.3d at

107 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct.

927, 74 L. Ed. 2d 765 (1983)).   "A court has a duty to stay its proceedings if it is satisfied that the

issue before it is arbitrable, and 'this duty . . . is not diminished when a party bound by an

agreement raises a claim founded on statutory rights.'" *Id.*, 436 F.3d at 108 (quoting *Shearson/Am.*

*Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)).

However, "like any statutory directive, the Arbitration Act's mandate may be

overridden by a contrary congressional command."  *Shearson/Am. Express, Inc.*, 482 U.S. at 226.

> The party opposing arbitration has the burden of showing that
> Congress intended to preclude arbitration of the statutory rights at
> issue. Congressional intent can be deduced from the statute's text or
> legislative history, or from "an inherent conflict between arbitration
> and the statute's underlying purposes."

*MBNA*, 436 F.3d at 108 (quoting *Shearson/Am. Express, Inc.*, 482 U.S. at 227).   In particular,

where a dispute involves both the Arbitration Act and the Bankruptcy Code, it is has been

acknowledged that there is an inherent conflict between the policies.   "'Bankruptcy policy exerts

an inexorable pull towards centralization while arbitration policy advocates a decentralized

approach towards dispute resolution.'"  *In re U.S. Lines, Inc.*, 197 F.3d at 640 (quoting *Societe*

*Nationale Alegrienne Pour La Recherche, La Production, Le Transport, La Transformation et La*

*Commercialisation des Hyrocarbures v. Distrigas Corp.*, 80 B.R. 606, 610 (D. Mass. 1987)).

Therefore, in determining whether a motion to compel arbitration should be granted

and bankruptcy proceedings stayed pending the arbitration proceeding, courts in the Second

Circuit apply a multi-step analysis.

> [F]irst, it must determine whether the parties agreed to arbitrate;
> second it must determine the scope of that agreement; third, if

> federal statutory claims are asserted, it must consider whether
> Congress intended those claims to be nonarbitrable; and fourth, if
> the court concludes that some, but not all, of the claims in the case
> are arbitrable, it must then decide whether to stay the balance of the
> proceedings pending arbitration.

*Bethlehem Steel Corp v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 789

(Bankr. S.D.N.Y. 2008) (quoting *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 75-76 (2d Cir. 1998)).

A.    *Agreement to Arbitrate.*

In determining whether an agreement to arbitrate exists, federal courts generally

apply the state-law principles that govern the formation of contracts. *First Options of Chicago,*

*Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "To determine which state's law to apply to the issue of

contract formation, a federal court sitting with federal question jurisdiction looks to the choice of

law doctrine of the forum state." *Follman v. World Fin. Network Nat'l Bank*, 721 F. Supp. 2d

158, 162 (E.D.N.Y. 2010). In New York, where this Court sits, courts will enforce the parties'

contractual choice of law provision "so long as the chosen law bears reasonable relationship to the

parties or the transaction." *Id.* (quoting *Welsbach Elec. Corp. v. MasTec North America, Inc.*, 7

N.Y.3d 624, 629, 859 N.E.2d 498, 825 N.Y.S.2d 692 (2006)). The Comprehensive Arbitration

Agreement does not specifically contain a choice of law provision but does provide that the

arbitration shall be under the Federal Arbitration Act under jurisdiction of the County of Orange in

the State of California, and be in conformity with the procedures of the California Arbitration Act.

In addition, the Plaintiff's place of business is in California, the Debtor was residing in California

at the time he signed the Comprehensive Arbitration Agreement, and the alleged disputes that are

the subject of the Arbitration Proceeding occurred during the Employment Period while the Debtor

resided in California. Accordingly, the Court will apply California law to determine whether a

valid arbitration agreement exists between the parties.

Under California contract law, a valid and enforceable contract must satisfy the following elements: "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient consideration." *United States of America ex rel. Oliver v. The Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550).

The Debtor has not disputed the existence of the arbitration agreement or that he signed the Comprehensive Arbitration Agreement.   The Court notes, however, that there is no evidence the Plaintiff signed the Comprehensive Arbitration Agreement and gave its consent to be bound by an arbitration proceeding.   The Comprehensive Arbitration Agreement appears to be a consent form whereby the employee unilaterally agrees and acknowledges that not only he but also the employer will utilize binding arbitration to resolve all disputes that may arise out of the employment context.   Nevertheless, the Court will presume for the purposes of this Memorandum Decision and Order that the Plaintiff has implicitly consented to be bound by an arbitration proceeding because the Plaintiff generated the form agreement and it is the Plaintiff who is seeking to compel arbitration.

B.      *Scope of Arbitration Agreement.*

As to the scope of the arbitration agreement, agreements that "purport to refer all disputes arising out of a contract to arbitration" have been held to be broad in scope.   *In re Bethlehem Steel Corp.*, 390 B.R. at 790 (quoting *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 21 (2d Cir. 1995)).   In this case, the Comprehensive Arbitration Agreement provides that the Plaintiff and the Debtor would:

> utilize binding arbitration to resolve all disputes that may arise out
> of the employment context.   Both the [Plaintiff] and [the Debtor]

16

> agree that any claim, dispute and/or controversy that either [the Debtor] may have against the [Plaintiff] . . . or the [Plaintiff] may have against [him], arising from, related to, or having any relationship or connection whatsoever with [his] seeking employment with, employment by, or other association with the [Plaintiff] shall be submitted to and determined exclusively by binding arbitration. . . .

While the scope of the arbitration agreement is broad and appears to encompass all the disputes between the parties, Judge Carter's Arbitration Order makes clear that the question of whether Plaintiff's claims are arbitrable has yet to be decided.   This brings us to the third prong in the multi-step analysis, i.e., whether the claims are non-arbitrable.   This analysis requires a review of the claims pending before this Court and whether there is a contrary congressional command.

   C.    *Whether Claims are Nonarbitrable.*

         As a starting point, courts look to see if the dispute implicates a core or non-core proceeding under the Bankruptcy Code.   Where the matter before the bankruptcy court is a non-core proceeding, then the bankruptcy court generally must stay the non-core proceeding in favor of arbitration.   *In re Crysen/Montenay Energy Co.*, 226 F.3d at 166 (finding an arbitration of a contract dispute to be a non-core proceeding and must proceed to arbitration).   With respect to core proceedings, the analysis is more complicated.

> Core proceedings implicate more pressing bankruptcy concerns, but even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration. "Certainly not all core bankruptcy proceedings are premised on provision of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." *Insurance Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir. 1997). However, there are circumstances in which a bankruptcy may stay arbitration….

*In re U.S. Lines, Inc.*, 197 F.3d at 640.

Accordingly, the inquiry does not end simply because the dispute involves a core proceeding, but rather the conflict must impinge upon a "substantially core" function of the bankruptcy process.   *In re Hostess Brands, Inc.*, No. 12-22052-rdd, 2013 Bankr. LEXIS 79, * 6-7 (Bankr. S.D.N.Y. Jan. 7, 2013).

> This determination requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy. The objectives of the Bankruptcy Code relevant to this inquiry include "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." If a severe conflict is found, then the court can properly conclude that, with respect to the particular Code provision involved, Congress intended to override the Arbitration Act's general policy favoring enforcement of arbitration agreements.

*MBNA*, 436 F.3d at 108 (quoting *In re Nat'l Gypsum Co.*, 118 F.3d at 1069).   Where a severe conflict is found, the bankruptcy court then has the discretion to determine whether arbitration should be allowed to proceed.   However, if the arbitration would not seriously jeopardize the objectives of the Bankruptcy Code, then there is no discretion but to stay the bankruptcy proceeding in favor of arbitration.   *Id.*, 436 F.3d at 109-10 (finding the bankruptcy court was required to send a dispute regarding a violation of the automatic stay, which is a core proceeding, to arbitration because the important purposes of providing debtors with a fresh start, protecting estate assets, and centralizing disputes concerning the estate were not jeopardized where the debtor had already received her discharge and the bankruptcy case was closed).

In this adversary proceeding, in order to find that a debt is excepted from discharge, a determination must be made on three separate issues: (1) liability, (2) amount of damages, if any, and (3) dischargeability.   It is clear and undisputed that the dischargeability of debt is a matter that

18

arises only under a federal statute (i.e., the Bankruptcy Code).   As admitted by the Plaintiff in the

Complaint, dischargeability of debt is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).   A

creditor may only challenge dischargeability under section 523(a)(2), (4) and (6) of the

Bankruptcy Code in bankruptcy court during a debtor's bankruptcy case.   11 U.S.C. § 523(c)(1).

A debt is not excepted from discharge under 11 U.S.C. § 523(a)(2), (4) or (6) unless a bankruptcy

court makes that determination.   11 U.S.C. § 523(c)(1).

The Plaintiff argues that the determination of liability and amount of damages,

however, are matters of state law and, therefore, are non-core proceedings.   Thus, the Plaintiff

contends that under the Second Circuit's decisions in *U.S. Lines, Inc.* and *Crysen/Montenay*

*Energy Co.*, this Court lacks any discretion and the referral of the non-core proceedings to an

arbitrator is mandatory.   The Plaintiff proposes that the issues be severed and the parties can

return to the bankruptcy court for a determination as to dischargeability once the arbitrator has

ruled on the issues of liability and damages.   Yet, in so urging, the Plaintiff ignores that "a

determination that a proceeding is not a core proceeding shall not be made solely on the basis that

its resolution may be affected by State law."   28 U.S.C. § 157(b)(3).

The few courts that have directly addressed the issue of whether the underlying

issues of liability and amount of damages constitute core or non-core proceedings found

dischargeability of debt to be an essential function of the bankruptcy process such that allowing an

arbitrator to determine the underlying issues of liability and amount of damages would severely

conflict with the Bankruptcy Code's requirement that a bankruptcy court determine the issue of

dischargeablity.   *Ackerman, et al. v. Eber (In re Eber),* 687 F.3d 1123, 1131 (9th Cir. 2012);

*Taylor v. Davis (In re Davis)*, No. 12-80034-dd, 2013 Bankr. LEXIS 429, * 14 (Bankr. D.S.C. Feb.

19

1, 2013); *Holland, et al. v. Zimmerman (In re Zimmerman)*, 341 B.R. 77, 80 (Bankr. N.D. Ga.

2006).

> Because the discharge is a critical, if not the central, objective of an
> individual's bankruptcy filing, arbitration of issues relating to
> dischargeability inherently conflicts with bankruptcy law that
> expressly provides for, and in some instances requires, the
> bankruptcy courts to make dischargeability determinations and
> necessarily jeopardizes the Debtor's interests in having
> dischargeability and other issues relating to the "fresh start"
> determined in one forum with particularized expertise to do so.
> Under these principles, a bankruptcy court ordinarily should decline
> to relinquish its jurisdiction over dischargeability issues and should
> deny a request to modify the stay to permit arbitration to proceed.

*In re Zimmerman*, 341 B.R. at 80.   See also *In re Davis*, 2013 Bankr. LEXIS 429 at * 14

(Submitting the issue of dischargeability to arbitration would interfere with the centralization of

determinations regarding debtor's assets and legal objections in the bankruptcy court as intended

by Congress).

Similarly, in *In re Eber*, the Court of Appeals for the Ninth Circuit found that the

district court did not abuse its discretion when it affirmed the bankruptcy court's denial of a motion

to compel arbitration because granting the motion would have conflicted with the underlying

purposes of the Bankruptcy Code.   Creditors in *Eber* filed a complaint in the bankruptcy court

seeking a determination that the debts owed to them were nondischargeable and alleged in the

complaint that the dischargeability of the claims constitute core proceedings.   More than three

months later, the creditors filed a motion to stay the dischargeability action and compel the debtor

to proceed with the prepetition arbitration the creditors had commenced against the debtor.   The

creditors argued that issues of liability and damages are non-core matters based on New York law

and the right to arbitration cannot be denied.   As the Ninth Circuit noted, "there is an important

distinction between collateral estoppel and *potential* collateral estoppel . . . and that allowing an arbitrator to decide the issues related to dischargeability . . . would conflict with important bankruptcy principles." 687 F.3d at 1131 (emphasis in original text).

The facts in this case parallel those found in *Eber*.   The Plaintiff commenced the Central District Case prepetition seeking to compel the Debtor to participate in arbitration.   After the Debtor's bankruptcy filing, the Plaintiff filed a complaint in this Court seeking to except its claims against the Debtor from discharge under section 523(a)(2), (4), and (6) of the Bankruptcy Code.   The Plaintiff admits that the dischargeability action is a core proceeding and involves the same common set of facts as the Arbitration Proceeding.

The Plaintiff argues that the underlying claims in the pending adversary proceeding for which the Plaintiff seeks to hold the Debtor liable are state law based tort and contract law claims.   However, a review of the Complaint shows that the underlying claims are based upon fraud, embezzlement and false pretenses that occurred while the Debtor was employed by the Plaintiff.   The First Count of the Complaint seeks to have the funds allegedly converted, embezzled and stole by false pretenses, false representation and/or actual fraud be nondischargeable under 11 U.S.C. § 523(a)(2)(A).   The Second Count of the Complaint alleges that the Debtor committed fraud, defalcation, embezzlement and larceny with respect to the Plaintiff's property, including funds and other corporate documents, and the debt arising from such actions is excepted from discharge under 11 U.S.C. § 523(a)(4).   Lastly, the Third Count of the Complaint seeks to have the debt also be excepted from discharge under 11 U.S.C. § 523(a)(6) on the basis that by embezzling, converting and stealing of the Plaintiff's funds, the Debtor willfully and maliciously caused damage and injury to the Plaintiff and the Plaintiff's property.   There is no

allegation of state law based tort or breach of contract raised in this adversary proceeding.

The Court agrees with *Eber* and *Zimmerman* that in the context of section 523(a)(2), (4), and (6) of the Bankruptcy Code the issues of liability, amount of damages and dischargeability are so intertwined that such a separation of issues may not always be feasible.   A finding on liability on the Plaintiff's underlying claims by an arbitrator would necessarily involve a finding of fraud, defalcation, or other wrongdoing which would come within the purview of the bankruptcy court's exclusive jurisdiction over the issue of dischargeability of such claims under section 523(a)(2), (4) and (6) of the Bankruptcy Code.   While bankruptcy courts in a dischargeability proceeding have given collateral estoppel effect to the findings made by an arbitrator with respect to a prepetition arbitration award,[2] where there is no prepetition arbitration award in place, allowing an arbitrator to decide issues of liability and amount of damages would potentially subsume the dischargeability issue and supplant the bankruptcy court's prerogative to make the determination as to that issue and the issue of the debtor's entitlement to a fresh start. This leaves the bankruptcy court with the role of ratifying a decision made by someone who may or may not have any expertise in bankruptcy and who certainly has no authority under the Bankruptcy Code to make a determination as to dischargeability.   Therefore, the issues of liability, amount of damages, and dischargeability should essentially be considered as one proceeding that is "substantially core" to the bankruptcy process.   Permitting arbitration to proceed on the underlying claims would conflict with a "substantially core" function of the

---

[2] *In re Molina*, 228 B.R. 248 (9th Cir. B.A.P. 1998) (affirming bankruptcy court's finding that collateral estoppel applied to a confirmed prepetition arbitration award and that such award was nondischargeable under section 523(a)(6) of the Bankruptcy Code); *In re O'Neill*, 260 B.R. 122 (Bankr. E.D. Tex. 2001) (giving preclusive effect to an unconfirmed prepetition arbitration award and finding such debt to be nondischargeable under section 523 of the Bankruptcy Code); *In re Zangara*, 217 B.R. 26 (Bankr. E.D.N.Y. 1998) (finding that preclusive effect should be given to a prepetition NASD arbitration award in connection with a dischargeability action under section 523(a)(2)(A) of the Bankruptcy Code).

bankruptcy process and override the congressional mandate given to the bankruptcy court.

         D.     *Discretion of the Court.*

         Having determined that the pending dischargeability proceeding is "substantially core", this Court has discretion to refuse to enforce the arbitration agreement.  "In *U.S Lines* and *MBNA*, the Second Circuit clearly articulated that in certain core bankruptcy proceedings that severely conflict with the Federal Arbitration Act, the court has discretion to deny arbitration."  *In re Bethlehem Steel Corp.*, 390 B.R. at 794.

         In this case, the Court exercises its discretion not to stay the adversary proceeding in favor of arbitration.  Aside from the potential collateral estoppel effect that a determination by an arbitrator would have on this adversary proceeding, there are two other adversary proceedings pending before this Court involving a common set of facts and law and the same parties which may be impacted.  Even if the arbitrator does not render such findings on the issue of dischargeability, this Court will need to conduct a trial or evidentiary hearing on the very same facts considered by the arbitrator in order to make a determination as to dischargeability.  Therefore, not only would there be a waste of judicial resources, but this would also be burdensome on the Debtor and witnesses where litigation is occurring in multiple forums.  The Bankruptcy Code's purpose of centralizing all litigation in one forum would be defeated, especially where the Plaintiff and ICB would continue prosecuting the other two nondischargeability proceedings against the Debtor before this Court in New York while concurrently pursuing similar claims in arbitration in California.  Accordingly, principles of judicial efficiency and judicial economy dictate that the determination of the issues of liability, amount of damages and dischargeability be conducted in a single forum rather than severing the various issues.

However, this Court's Memorandum Decision and Order does not stand for the proposition that bankruptcy courts must always deny a motion to stay a dischargeability proceeding brought under section 523(a)(2), (4), or (6) of the Bankruptcy Code or any other core proceeding in favor of arbitration.   In exercising its discretion in determining whether a "substantially core" proceeding should be stayed in favor of arbitration, a court should also consider, among other factors, the potential collateral estoppel effect that such an arbitration proceeding may have and the facts and circumstances of the case before it.   Indeed, the bankruptcy court in *Hostess Brands, Inc.*, exercised its discretion in denying a motion to compel arbitration where the issue of cash collateral, which was found to be a "substantially core" matter, was such that even if the parties did agree to arbitration and Congress did not intend to preclude the arbitration of this issue, the court determined that arbitration would be inappropriate based upon the nature of the claim and the facts of the case.   2013 Bankr. LEXIS 79 at *14 (concluding that the whole dispute concerning cash collateral (including the portion of the dispute which would not result in anything more than providing a data point for the court in deciding the dispute), should not be determined by an arbitration panel).   See also *In re U.S. Lines*, 197 F.3d at 641 (finding that it was within the bankruptcy court's discretion to refuse to refer declaratory judgment proceedings it found to be core to arbitration); *In re Bethlehem Steel Corp.*, 390 B.R. at 795 (finding that even if preference claims were subject to arbitration, the court would exercise its discretion in denying motions to compel arbitration because of a sufficiently severe conflict between the Federal Arbitration Act and the Bankruptcy Code); *Cardali v. Gentile (In re Cardali)*, No. 10-3531 (SHL), 2010 Bankr. LEXIS 4113 (Nov. 18, 2010) (exercising discretion to stay any non-arbitrable claims in favor of arbitration where the bankruptcy court found the underlying causes of action in the

24

Debtor's complaint for fraudulent conveyances, turnover of assets, disallowance claims were under the circumstances either non-core or did not raise any unique bankruptcy issue).

Likewise, some courts have also exercised their discretion in determining that arbitration may be permitted in the context of dischargeability under the facts and circumstances of the case before them.  *Sheinfeld v. Leeds (In re Sheinfeld)*, No. 3:03-CV-2601-B, 2005 U.S. Dist LEXIS 14547 (N.D. Tex. July 19, 2005), *aff'd*, 201 Fed. Appx. 998 (5th Cir. 2005) (finding neither the district court nor the bankruptcy court made any reversible error in giving preclusive effect to an arbitration award where the bankruptcy court exercised its discretion in lifting the automatic stay and specifically referred the issue of liquidation to arbitration but not the issue of dischargeability); *In re Zimmerman*, 341 B.R. at 81 (modifying the stay to allow arbitrators to hear issues relating to liability and amount of damages as to claims under 11 U.S.C. § 523(a)(2), (4) and (6) for purpose of judicial economy where arbitration of the same claims within the exception of 11 U.S.C. § 523(a)(19) would not be inconsistent with nor jeopardize the objectives of the Bankruptcy Code); *In re Hermoyian*, 435 B.R. 456 (Bankr. E.D. Mich. 2010) (finding that the determination of a debt owing by the debtor and the liquidation of the amount of that debt to be core proceedings in the context of 11 U.S.C. § 523 but finding no inherent conflict between arbitration of the limited matters regarding the existence and amount of a debt and the underlying policy to promptly adjudicate the dischargeability of such debt, especially where the chapter 7 trustee filed a no asset report and there is no conflict with the Code's policy of a centralized forum for claims resolution and orderly distribution of assets).

II.      Whether Any Changed Circumstances Exist.

With respect to the Plaintiff's argument that there exist changed circumstances

which would permit the Plaintiff to compel arbitration pursuant to Judge Eisenberg's Order, there

is no evidence that Plaintiff would be irreparably prejudiced if it were to proceed in the bankruptcy

court, and Plaintiff has failed to satisfy its burden that cause exists to modify the permanent

injunction to allow the resolution of its claims in an alternate forum (i.e., arbitration).   The fact

that the Orange County Superior Court finally lifted a stay it imposed on the Confidentiality

Enforcement Action against Brittany is inapposite to the Debtor's own bankruptcy proceeding.

As Brittany has not filed for bankruptcy protection, the automatic stay under the section 362 of the

Bankruptcy Code never applied to the Plaintiff's lawsuits against Britany.   *In re Related Asbestos*

*Cases*, 23 B.R. 523, 529 (N.D. Cal. 1982) (finding that the automatic stay serves to protect the

estate of the bankrupt alone and does not encompass action against related but independent

co-defendants).   The Plaintiff and ICB could have continued their prosecution against Brittany at

any time the Orange Superior Court was ready to proceed.   Similarly, the fact that there may be a

different ruling with respect to a co-defendant in pending litigation outside of the bankruptcy is not

a sufficient reason to lift the discharge injunction in this case to compel the debtor to continue in

such litigation as claims against Brittany can be severed.   Even if the parties were to proceed in

arbitration with respect to this adversary proceeding, there may still be a risk of the arbitrator

making a finding that may be inconsistent with this Court's findings in the other two adversary

proceedings before it.   Rather, by having all three Adversary Proceedings in a single forum would

at least ensure that any rulings against the Debtor as to liability, amount and dischargeability

would be consistent.

> The Plaintiff's argument that all discovery related to the adversary proceeding has

been completed and the parties are ready for trial is also not a reason to compel arbitration but

rather to proceed in the bankruptcy court.    While the Plaintiff alleges that the Debtor has broadened the scope of discovery in these Adversary Proceedings by seeking documents that are relevant only to the details of the underlying claims and not just the dischargeability of such claims, these are discovery issues that relate not to just this adversary proceeding but all three Adversary Proceedings and are within this Court's authority under the Bankruptcy Rules to hear and determine.    Lastly, the Debtor's motion to consolidate the three Adversary Proceedings for purposes of discovery and trial is a procedural matter and does not affect the substantive rights of either party.

<u>CONCLUSION</u>

Based upon the foregoing, the Plaintiff's Motion to Compel Arbitration is denied. So Ordered.

Dated: September 30, 2014
Central Islip, New York

Louis A. Scarcella
Louis A. Scarcella
United States Bankruptcy Judge